The **STATE** of Utah, Plaintiff and Respondent,

v.

Nicholas Louis **IACONO**, Defendant and Appellant.

No. 20434.

Supreme Court of Utah.

Sept. 23, 1986.

Kent O. Willis, Orem, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Sandra L. Sjogren, Salt Lake City, for plaintiff and respondent.

PER CURIAM:

This is an appeal from a conviction of aggravated robbery by defendant Nicholas Louis Iacono, U.C.A., 1953, § 76–6–302 (1978 ed.). Defendant presents three issues on appeal: (1) whether the court erred in admitting into evidence at trial a pair of black pants obtained in a search of a trailer owned by defendant's mother, (2) whether the failures to call a witness and to object to the introduction of the pants resulted in the ineffective assistance of counsel, and (3) whether the evidence is insufficient to support the verdict.

A transcript of the evidence at trial is not included in the record before us on appeal. In its place, counsel for both parties have stipulated to a statement of the trial testimony. We rely upon that statement of the evidence, and we affirm the conviction.

Between 5:30 and 5:40 p.m. on October 18, 1983, the Colortyme Rental store in Orem, Utah, was robbed of $193.80 by a lone gunman. The store employee, Miss Ellsworth, testified that the gunman wore black pants, a black jacket, and tan gloves. He carried a rifle described as having a white spacer around the stock. He also wore a paper sack over his head, with two large, round holes cut for the eyes. This paper sack was later located by police in a dumpster near defendant's apartment and

was identified by Miss Ellsworth as the sack worn by the robber.

Shane Albrecht testified that at the time of the robbery, he hid in a back room of the store and saw the gunman and the rifle. A rifle was later found under some bushes outside defendant's apartment. This rifle was introduced into evidence and identified as being similar to the one used in the robbery. A black jacket belonging to defendant was found in defendant's apartment and was also identified as similar to the jacket worn by the gunman.

Defendant's ex-wife, Julie Iacono, testified that defendant wore black pants on the evening of the robbery. She claimed that he and his friend, Rick Wright, were in her apartment from 4:00 p.m. until approximately 6:30 p.m. on the night of the robbery. But, at trial, she admitted that when officers had earlier asked her where defendant had been after 5:00 p.m., she had told them that he was out looking for work. She also testified that she took the rifle out of defendant's apartment at 10:00 p.m. on the evening of the robbery and hid it under some bushes, where it was later found by the police.

Rick Wright testified that on the morning of the robbery, defendant asked to borrow the rifle, a mask, and some gloves. Wright loaned the rifle to defendant and took it to him at his apartment. Defendant did not come to Wright's place until after the robbery had occurred, around 5:45 p.m., and thereafter they went to Julie's apartment.

Earlier in the day, defendant complained to Wright about not having money, but later that evening defendant had $180. Defendant talked frequently with Wright about committing robberies and boasted that "armed robberies are a piece of cake." Wright also affirmed that defendant wore his black jacket and black pants. Sherry, Rick Wright's wife, testified that defendant and Wright left her residence around 3:45 p.m. and returned around 7:00 p.m. She described defendant as wearing dark clothing.

Defendant admitted that on October 18, he wore black pants and a maroon sweater and that his black jacket was in his car. He claimed that on that night he was with the Wrights from 4:00 p.m. to 6:30 p.m. and was not involved in any robbery. Because he always had money from his "business dealings," he had no need to commit robberies.

The black pants which defendant argues were illegally seized were found by police during a warrantless search of a trailer belonging to defendant's mother. The officers were shown and admitted into the trailer by Julie Iacono, who consented to the search. The black pants were introduced into evidence without objection from defense counsel.

First, defendant challenges the warrantless search of his mother's trailer, wherein the black pants were seized, as *per se* unreasonable and violative of his fourth amendment rights under the Constitution of the United States. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). At trial, the prosecution sought to justify its search of the trailer, claiming that "consent" to the search was given by Julie Iacono, defendant's ex-wife. It now argues that because he had no possessory or proprietary interest in the trailer, defendant had no expectation of privacy and no standing to object to the search. *State v. Valdez*, 689 P.2d 1334 (Utah 1984). It is the State's burden to establish that from a totality of the circumstances a valid consent was properly obtained and freely given. *State v. Whittenback*, 621 P.2d 103, 106 (Utah 1980). The record does not satisfy that burden to show that Julie Iacono had any authority to give consent to the search of the trailer or that the officers' reliance on her permission was justified. But the stipulated evidence also fails to support defendant's assertion of a constitutionally protectible interest in the trailer or its contents. There is no evidence that he shared ownership, use, or possession of the trailer. Defendant does not show any legitimate expectation of privacy in the premises. Consequently, we

need not reach the issue of whether the permission given by his ex-wife to search the trailer was valid. Even assuming that Julie's consent was insufficient to justify the search, standing was not thereby conferred upon defendant to attack its results. *State v. Valdez, supra; State v. Purcell,* 586 P.2d 441 (Utah 1978); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

█ No other basis is shown to exclude defendant's black pants from the evidence at trial. Because defendant had no ground to contest the constitutionality of the search and the resulting evidence, he was not denied the effective assistance of counsel by his attorney's failure to make a futile objection thereto. *State v. Malmrose,* 649 P.2d 56, 59 (Utah 1982). Moreover, defendant admitted wearing his black pants that evening, a fact to which his ex-wife and the Wrights also testified. Therefore, even assuming error, the introduction of those pants was merely cumulative and was not prejudicial to defendant. U.C.A., 1953, § 77–35–30 (1982 ed.).

█ Defendant complains that his attorney improperly failed to call as a witness a fellow jail inmate who had testified at the preliminary hearing. He argues that the omitted testimony was exculpatory and would have cleared him of the charges because, at the preliminary hearing, the inmate admitted that he had fabricated a story that defendant had confessed his crime. Assuming that the witness so testified at the preliminary hearing,[1] his admission of perjury would not exculpate defendant, but would only make suspect any testimony subsequently offered by him. An admission by the witness that his testimony was false does not refute the substantial other evidence of defendant's connection to the robbery. Defendant has not established any reasonable probability that had this witness testified the jury's verdict would have been different. *State v. White,* 671 P.2d 191, 194 (Utah 1983). We conclude that defendant was not denied effective legal assistance at trial by counsel's

failure to call a witness to admit to giving perjured testimony or to make a meritless objection to evidence. *Codianna v. Morris,* 660 P.2d 1101 (Utah 1983). *Accord State v. Frame,* 723 P.2d 401 (Utah 1986).

█ Defendant's final contention—that the evidence is insufficient to support the jury's verdict—is also without merit. The testimony and exhibits, viewed in a light favorable to the jury's finding, are more than sufficient to support the guilty verdict. Defendant's size, clothing, and appearance were the same as the robber's. The paper sack mask was found discarded near his apartment. The rifle and gloves defendant used in the robbery were borrowed by him from a friend. Later, the gun was taken from his apartment and hidden by his ex-wife. That evening, he acquired approximately $180, which was approximately the amount stolen. Finally, he boasted that evening that "armed robberies are a piece of cake." The weight and credibility of the witnesses and evidence were matters for the jury to determine. We do not disturb that determination. The evidence is not so lacking or insubstantial that reasonable minds must have had a reasonable doubt of defendant's guilt.

Defendant's conviction is affirmed.

---

1. We have no record before us of the witness's testimony at defendant's preliminary hearing.