STATE of Utah, Plaintiff
and Respondent,

v.

Karen Marie JOHNSON, Defendant
and Appellant.

No. 870222–CA.

Court of Appeals of Utah.

March 21, 1989.

Rehearing Denied April 5, 1989.

Debra K. Loy, Joan C. Watt (argued),
Salt Lake Legal Defenders, Salt Lake City,
for defendant and appellant.

R. Paul Van Dam, Atty. Gen., Dan R.
Larsen (argued), Asst. Atty. Gen., for
plaintiff and respondent.

Before DAVIDSON, GARFF and
ORME, JJ.

## OPINION

GARFF, Judge:

Defendant, Karen Marie Johnson, ap-
peals the trial court's denial of her motion
to suppress and her conviction for posses-
sion of a controlled substance.[1] We affirm.

On November 3, 1986, Deputy Sheriff
Stroud stopped a vehicle for having a
faulty brake light. Defendant was a pas-
senger in that vehicle. At the suppression
hearing, Stroud testified that prior to
stopping the vehicle, he ran a check on the
license plate and obtained the name of the
registered owner. He then approached the
stopped vehicle and asked the driver for
her license. The name on the license was
not the name of the registered owner.

---

**1.** At a bench trial, defendant was convicted on
stipulated facts testified to at a previous hearing

on defendant's motion to suppress.

When Stroud requested the registration certificate, the driver was unable to produce it. Stroud then asked defendant for identification, reasoning that there was a possibility the car was stolen because there was no registration and no owner present. After initially denying that she had any identification, defendant told Stroud her name and birthdate.

Stating that he would be right back and expecting the driver and defendant to remain, Stroud returned to his vehicle and ran license checks on the two, determining that the driver was driving on a suspended license and that defendant had several outstanding warrants. He did not, however, inquire as to whether the car was stolen, nor did he know of any reports of stolen cars matching that car's description. He then wrote a citation on the driver and requested a backup police officer.

When defendant was informed that she was being arrested for outstanding warrants, she exited the vehicle, holding a backpack which had the name "Karen" on it. Defendant initially denied that the backpack belonged to her, but later admitted that it was hers. Incident to her arrest, the bag was searched and was found to contain amphetamines, drug paraphernalia and defendant's Utah identification.

Defendant's version of the sequence of events varies from Stroud's. She testified that after Stroud received the driver's license, he asked defendant if she had any identification. She said that she did not. He told them to wait, that he would be right back, and returned to his vehicle for five or ten minutes, long enough for her to smoke a cigarette or two. When he returned, he asked for the registration certificate. When it could not be produced, Stroud asked defendant to return to his vehicle with him, where, at his request, she gave him her name and birthdate. He then sent her back to the other car. Fifteen minutes later, he came back to their car, gave the driver a citation, took defendant out of the car, frisked and handcuffed her,

and put her in the front seat of the sheriff's car. She had possession of her bag at this time. Defendant stated that she gave Stroud her name and birthdate because she was required to do so, and did not believe that she could leave.

The issues on appeal are: (1) whether defendant may raise, for the first time on appeal, the argument that state law and article 1 section 14 of the Utah Constitution provide greater protection than the fourth amendment of the United States Constitution against unreasonable search and seizure; (2) whether defendant, a passenger in a motor vehicle, was seized within the meaning of the fourth amendment; and (3) if there was a seizure, whether it was reasonable.

In considering the trial court's action in denying defendant's motion to suppress, we will not disturb its factual evaluation unless its findings are clearly erroneous. *State v. Walker,* 743 P.2d 191, 193 (Utah 1987). The trial judge is in the best position to assess the credibility and accuracy of the witnesses' divergent testimonies. *State v. Arroyo,* 770 P.2d 153, 154–156, (Utah Ct.App.1989); *State v. Sierra,* 754 P.2d 972, 974 (Utah Ct.App.1988). However, in assessing the trial court's legal conclusions based upon its factual findings, we afford it no deference but apply a "correction of error" standard. *Oates v. Chavez,* 749 P.2d 658, 659 (Utah 1988).

## UTAH CONSTITUTIONAL ISSUE

■ Defendant claims that her detention violated the fourth amendment of the United States Constitution and article 1, section 14 of the Utah Constitution. She also argues that the legislative intent behind Utah Code Ann. § 77–7–15 (1980) was to provide greater protection against unreasonable searches and seizures than is provided by the fourth amendment, and that her seizure violated the provisions of both constitutions.[2] However, defendant failed to

---

2. Utah has never drawn any distinctions between these two provisions and has "always considered the protections afforded to be one and the same." *State v. Watts,* 750 P.2d 1219, 1221 (Utah 1988). However, in a footnote comment, the court indicated that it has not ruled out the possibility of making such a distinction in a future case. *Id.* at n. 8.

brief or argue these issues at the trial level and first raised her statutory argument in her appellate brief. Nominally alluding to such different constitutional guarantees without any analysis before the trial court does not sufficiently raise the issue to permit consideration by this court on appeal. *James v. Preston*, 746 P.2d 799, 801 (Utah Ct.App.1987). "[W]here a defendant fails to assert a particular ground for suppressing unlawfully obtained evidence in the trial court, an appellate court will not consider that ground on appeal.... [M]otions to suppress should be supported by precise averments, not conclusory allegations...." *State v. Carter*, 707 P.2d 656, 660–61 (Utah 1985). Also, in *State v. Lee*, 633 P.2d 48, 53 (Utah 1981), the supreme court stated:

> There is nothing in the record to indicate that the point now urged upon this Court was unavailable or unknown to defendant at the time he filed his motion to suppress, and to entertain the point now would be to sanction the practice of withholding positions that should properly be presented to the trial court but which may be withheld for the purpose of seeking a reversal on appeal and a new trial or dismissal.

We, therefore, decline to consider this argument on appeal.

### SEIZURE

■ Defendant avers that she was seized within the meaning of the fourth amendment because she felt that she was not free to leave when Stroud told her to wait while he returned to his vehicle to check on the driver's license and to run a warrants check on defendant. "A seizure within the meaning of the fourth amendment occurs only when the officer by means of physical force or show of authority has in some way restricted the liberty of a person." *State v. Trujillo*, 739 P.2d 85, 87 (Utah Ct.App.1987). Further, "[w]hen a reasonable person, based on the totality of the circumstances, remains, not in the spirit of cooperation ... but because he believes he is not free to leave," a seizure occurs. *Id.; see also United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). Defendant was, therefore, seized when Stroud took her name and birthdate and expected her to wait while he ran a warrants check. Under the totality of the circumstances, defendant was reasonably justified in her belief that she was not free to go.

■ Now, the concern is whether the seizure was reasonable and permissible under the fourth amendment. In *State v. Deitman*, 739 P.2d 616 (Utah 1987) (per curiam), the Utah Supreme Court adopted the reasoning in *United States v. Merritt*, 736 F.2d 223, 230 (5th Cir.1984), wherein the Fifth Circuit specified three constitutionally permissible levels of police stops:

> (1) an officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will; (2) an officer may seize a person if the officer has an "articulable suspicion" that the person has committed or is about to commit a crime; however, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop"; (3) an officer may arrest a suspect if the officer has probable cause to believe an offense has been committed or is being committed.

*Deitman*, 739 P.2d at 617–18.

We conclude that the present case involves a "level two" stop. Thus, to justify the seizure, Stroud had to have a reasonable "articulable suspicion" that defendant had committed a crime. To determine if he acted reasonably under the circumstances, "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).

At this point, we defer to the findings of the trial judge because of his preferred position in evaluating the witnesses' credibility. *See Arroyo*, at 154–156. The record indicates that the trial court believed Stroud's testimony in concluding there was an articulable suspicion that defendant had committed a crime. Prior to asking defendant for identification, Stroud

believed that there was a possibility the car was stolen because the owner was absent and there was no registration. He knew that the driver was not the owner, but determined that it was reasonable to ask defendant her name to determine if it corresponded with the owner's name he had learned prior to stopping the vehicle. The fact that Stroud initially chose to do a warrants check instead of a stolen vehicle check is of no great significance because not all stolen cars are reported immediately. The trial judge stated that where there is a legitimate traffic stop, the driver has a suspended license, and there is "no way of telling who the owner of the vehicle is and whether they have permission to drive it because the owner is not present," a reasonable officer would inquire regarding the identity of a passenger. In weighing the testimony, the court was justified in finding that the amount of time defendant was required to wait, even though a passenger, was reasonable and did not take any longer than a normal traffic stop.

Thus, there was substantial evidence for the trial court to find as it did. Although a seizure occurred, it conformed to constitutional requirements in that Officer Stroud had a reasonable articulable suspicion that the car could have been stolen, and defendant was not detained for an unreasonable period of time. We, therefore, affirm defendant's conviction.

DAVIDSON, J., concurs.

ORME, Judge (dissenting):

Although the legal analysis applicable to this case is ably set out in the majority's opinion, I cannot agree with their ultimate conclusion that the arresting officer had an articulable suspicion that the automobile had been stolen, much less that defendant had in any way participated in the theft.

The only facts relied on by the officer were that the driver's name was not the name of the registered owner and the driver was not able to locate the registration certificate. These facts are just as consistent with the more likely scenario that the driver borrowed the car from its rightful owner. Absent more—and this is all the officer pointed to—there was simply no articulable suspicion, as a matter of law, that the car had been stolen.

I would accordingly reverse.