UNITED STATES of America, Plaintiff–Appellee,

v.

Silverio CORRAL, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Jesus VALDEZ, Defendant–Appellant.

Nos. 89–4026, 89–4030.

United States Court of Appeals, Tenth Circuit.

March 30, 1990.

Richard D. McKelvie, Sp. Asst. U.S. Atty. (Dee V. Benson, U.S. Atty., with him on the brief), Salt Lake City, Utah, for plaintiff-appellee.

William A. Swano, Chicago, Ill., for defendant-appellant Corral.

Charles B. Lauer, Chicago, Ill., for defendant-appellant Valdez.

Before ANDERSON, BARRETT, Circuit Judges, and THEIS,* District Judge.

THEIS, District Judge.

This is an appeal from a final judgment and commitment in a criminal case. Appellants Silverio Corral and Jesus Valdez were indicted for possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The appellants' motion to suppress was denied. Following the denial of the motion to suppress, both appellants entered conditional guilty pleas, reserving the right to appeal the denial of the motion to suppress.

The issues presented by Corral's appeal are: whether there was reasonable suspicion to detain him by stopping Valdez' vehicle; whether the misdemeanor traffic stop was a pretext to stop and arrest him; whether there was probable cause to arrest him; and whether the evidence seized is tainted by the illegal stop and arrest. Brief of Appellant Corral at 1. The issues presented by Valdez' appeal are: whether there was reasonable suspicion to detain him by stopping his vehicle; whether the misdemeanor traffic stop was a pretext to search for drugs; whether there was probable cause to search the vehicle; and whether he consented to the search. Brief of Appellant Valdez at 1.

The testimony at the suppression hearing revealed the following. On August 2, 1988, at approximately 8:10 a.m., Utah Highway Patrol Sgt. Paul V. Mangelson was in a stationary, marked patrol car on Interstate Highway 15, monitoring northbound traffic with a radar unit. Mangelson observed a white Mercury travelling northbound. Mangelson thought the vehicle appeared suspicious, since the occupants did not "match" the car. Mangelson pulled out and followed the vehicle for a short distance. After he noted the vehicle's California license plate had expired in April 1988, Mangelson pulled the vehicle over. R. Vol. II, at 9–11, 46.

Mangelson approached the vehicle and asked the driver of the vehicle for a driver's license and registration. Valdez, the driver, produced an Illinois driver's license and showed it to Mangelson. Mangelson then requested a registration. In response, Valdez pointed to a folded piece of paper taped in the rear window. Mangelson thought the paper was a California temporary registration, which normally is displayed in the right front corner of the windshield. Because the piece of paper was folded, Mangelson could not see who was listed as the purchaser of the vehicle. R. Vol. II, at 11–15.

Mangelson then asked Valdez to open the hatchback so Mangelson could unfold the paper. In response, Valdez exited the car and opened the hatchback. Mangelson unfolded the registration, which reflected that Valdez had purchased the car the day before in California. Before Valdez had opened the hatchback, Mangelson observed that the spare tire was not in the tire compartment under the floor, but was lying on the floor of the hatch. The floor of the hatch was slightly bulged. Mangelson asked both Valdez and Corral whether they

* The Honorable Frank G. Theis, District Judge, United States District Court for the District of Kansas, sitting by designation.

were carrying any contraband, specifically guns or drugs, in their vehicle. Valdez responded that they were not carrying drugs or weapons. R. Vol. II, at 16–20.

At that point, Mangelson asked Valdez and Corral, who were both standing at the rear of the car, whether they objected to a search of the vehicle. Valdez stated, "Yeah, you can look" and picked up a duffel bag from the vehicle, unzipped it, and showed it to Mangelson. After looking through the duffel bag, Mangelson lifted up the carpet and cardboard covering the spare tire well and saw several bundles which he believed to contain cocaine. Mangelson then arrested and handcuffed the appellants. R. Vol. II, at 20–21.

During the course of the search, both defendants stood at Mangelson's side on the shoulder of the road. R. Vol. II, at 40–41, 54. At no time did either Valdez or Corral attempt to stop or restrict the search. R. Vol. II, at 53–54. The search of the spare tire compartment revealed a quantity of cocaine.

Mangelson testified that Valdez appeared to understand the questions asked of him in English. R. Vol. II, at 12–13. Mangelson further testified that during the initial stop of the vehicle, he asked Valdez and Corral where they had been and where they were going. Valdez responded in English that they had been in California working and that they were returning to Chicago, Illinois, from where they had come. R. Vol. II, at 18–19.

Valdez and Corral testified at the suppression hearing. Valdez testified that Mangelson motioned Valdez out of the car, took Valdez' keys, opened the trunk, handcuffed Valdez and Corral, and began to search the car. Valdez denied that Mangelson asked for permission to search and denied consenting to the search. Valdez testified that he understood no English. R. Vol. II, at 62–63, 66–67. Valdez denied having any conversation with Mangelson and claimed that he did not understand anything Mangelson said to him. R. Vol. II, at 74–75. Corral testified and generally corroborated Valdez' testimony. R. Vol. II, at 84–89. Corral testified that he understood very little English. R. Vol. II, at 92–93.

Special Agent Curtis D. Fillmore of the Drug Enforcement Administration (DEA) testified in rebuttal regarding the appellants' knowledge of English. Fillmore testified that Valdez responded in English to Fillmore's questions regarding his personal history, i.e., name, address, date of birth, place of birth, and the like. In one instance, Corral answered a question for Valdez which Valdez did not understand. R. Vol. II, at 94–95. Fillmore testified that Valdez and Corral complied with verbal commands (e.g., sit down; stand against the wall). R. Vol. II, at 110–11.

Following the hearing, the district court ruled that the initial stop of Valdez' vehicle was a valid investigatory stop. The district court specifically found Mangelson's testimony that he obtained Valdez' consent to be believable. The court found that Valdez voluntarily consented to the search and that he had at least a working knowledge of English. The court then denied both appellants' motions to suppress. R. Vol. II, at 131–33.

The standard of review is well established:

> In reviewing a denial of a motion to suppress, the trial court's finding of fact must be accepted by this court unless clearly erroneous, *United States v. Cooper*, 733 F.2d 1360, 1364 (10th Cir.1984), with the evidence viewed in the light most favorable to the district court's finding. *United States v. Obregon*, 748 F.2d 1371, 1376 (10th Cir.1984).

*United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir.1986) (quoting *United States v. Lopez*, 777 F.2d 543, 548 (10th Cir.1985)).

■ · Valdez and Corral argue that there was no reasonable suspicion to support the investigatory detention of vehicle and its occupants. An investigatory detention need not be based on probable cause, only reasonable suspicion:

> An investigative detention is justified where specific and articulable facts and rational inferences from those facts give

rise to reasonable suspicion that a person has committed or is committing a crime. *United States v. Espinosa,* 782 F.2d 888, 890 (10th Cir.1986). The district court found reasonable suspicion existed for the initial stop from the expired license plate and the apparent lack of a temporary registration. R. Vol. II, at 131. The district court found reasonable suspicion for the continued detention to question Valdez regarding suspicious circumstances, especially the bulge in the floor of the hatch where the spare tire should have been. R. Vol. II, at 131–32. These fact findings are supported by the record and are not clearly erroneous.

Valdez and Corral argue that the initial stop of the vehicle was a pretext. The district court specifically found that the stop was not pretextual. R. Vol. II, at 131. This court has recently stated that:

> [a] pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop.

*United States v. Guzman,* 864 F.2d 1512, 1515 (10th Cir.1988). In *Guzman,* decided after the district court ruled in the present case, we adopted an objective test to determine whether a traffic stop was pretextual. *Id.* at 1515–18. In the present case, the district court conducted an objective inquiry and found that, although Mangelson had some suspicions, he did observe an expired license plate which made the initial stop valid, not pretextual. R. Vol. II, at 131. While appellants argue that the stop was pretextual, since Valdez possessed a valid driver's license and temporary registration, appellants do not disclose how the officer could have determined these facts absent an investigatory stop. Appellants do not challenge the fact that the license plate on Valdez' vehicle had expired several months before. We find that the initial stop of the vehicle was not pretextual.

■ Valdez argues that he did not consent to the search and that he could not consent, since he does not understand Eng-lish. Whether a consent to search is voluntary or was a product of duress or coercion is a question of fact to be determined from the totality of the circumstances. *United States v. Mendenhall,* 446 U.S. 544, 557, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497 (1980); *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). This court has previously set forth the three-tiered analysis for determining whether the government has sustained its burden of showing that consent to search was voluntary:

> First, there must be clear and positive testimony that the consent was unequivocal and specific, and freely and intelligently given. Second, the Government must establish that consent was given without duress or coercion. Finally, we evaluate the first two standards with the traditional indulgence of the courts against a presumption of waiver of constitutional rights.

*United States v. Recalde,* 761 F.2d 1448, 1453 (10th Cir.1985) (citing *United States v. Abbott,* 546 F.2d 883, 885 (10th Cir.1977); *Villano v. United States,* 310 F.2d 680, 684 (10th Cir.1962)).

Applying these standards to the facts of the case, we conclude that Valdez voluntarily consented to the search of his vehicle. Mangelson testified that Valdez was able to respond in English to the trooper's questions. DEA Agent Fillmore, who interviewed Valdez after his arrest, testified that Valdez was able to relate the needed information in English. The district court made its own observation of Valdez' ability to understand English based on its observation of Valdez' conduct at the hearing. The court found as a fact that Valdez had a working knowledge of English.

There was clear testimony at the suppression hearing that Valdez freely consented to a search of the vehicle, both through his words and his conduct. There was no evidence of any coercion. Both Valdez and Corral stood by and watched the search. Neither requested Mangelson to stop. The district court's finding that Valdez could understand English and did in

fact consent to the search is amply supported by the record.

Valdez next argues that there was no probable cause to search. Since Valdez consented to the search of the car, probable cause was not required.

■ Corral contends that he was unlawfully placed under arrest and handcuffed immediately after the vehicle was stopped. Mangelson testified that he arrested appellants after finding the cocaine. The district court resolved this credibility issue against Corral. The court found as a fact that Valdez and Corral were arrested after the discovery of the cocaine. R. Vol. II, at 132. This finding of fact is supported by the record and is not clearly erroneous.

Corral argues that the evidence seized is tainted by the illegal arrest. Since we have found the arrest to be lawful, this argument is without merit.

The initial stop of the vehicle was not pretextual, but was based upon a reasonable suspicion that the vehicle's license plate was expired. Valdez consented to the search, which led to the discovery of the cocaine. The discovery of the cocaine provided probable cause to arrest Valdez and Corral. Finding nothing clearly erroneous in its ruling, we affirm the district court's denial of the appellants' motion to suppress and the appellants' convictions and sentences in these cases.

AFFIRMED.