**STATE of Utah, Plaintiff and Respondent,**

v.

**Karen Marie JOHNSON, Defendant and Petitioner.**

No. 890175.

Supreme Court of Utah.

Feb. 7, 1991.

---

Debra K. Loy, Joan C. Watt, Salt Lake City, for defendant and petitioner.

R. Paul Van Dam, Dan R. Larsen, Salt Lake City, for plaintiff and respondent.

HOWE, Associate Chief Justice:

We granted certiorari to review the decision of the court of appeals affirming defendant Karen Marie Johnson's conviction of possession of a controlled substance, a class A misdemeanor, in violation of Utah Code Ann. § 58–37–8. *State v. Johnson*, 771 P.2d 326 (Utah Ct.App.1989).

On November 3, 1986, Deputy Sheriff Stroud noticed a vehicle on the highway with faulty brake lights. Prior to stopping the vehicle, he ran a check on the license plate and obtained the name of the registered owner. When Stroud stopped the vehicle, he asked the driver for her driver's license. The name on the license was not the name of the registered owner. The officer also asked for the vehicle registration certificate, which the driver was unable to produce. Stroud then asked defendant, who was a passenger in the vehicle, for identification, reasoning that with no registration and no owner present, there was a possibility that the car had been stolen. Defendant denied having a driver's license or any identification but did give Stroud her name and date of birth. Stroud did not ask either of them who owned the vehicle, nor did he know of any report of a stolen car matching this car's description.

Stroud returned to his patrol car and ran a license and outstanding warrants check on the two occupants. He testified that he had expected them to wait for him and remain in their car. The check revealed that the driver had a suspended driver's license and that defendant had outstanding warrants.

The officer returned to the stopped vehicle and wrote a citation on the driver. He informed defendant that she was under arrest for outstanding warrants. She exited the car, carrying a backpack with the name "Karen" on it. Initially, she denied ownership of the backpack but eventually admitted that it was hers. A search of the backpack incident to her arrest produced drug paraphernalia, amphetamines, and her Utah identification.

 Defendant contends that the officer violated her fourth amendment right to be free from unreasonable searches and seizures.[1] The court of appeals found that a

---

1. Defendant also claims that her detention violated article I, section 14 of the Utah Constitu-

seizure within the meaning of the fourth amendment occurred "when Stroud took [defendant's] name· and birthdate and expected her to wait while he ran a warrants check." *State v. Johnson,* 771 P.2d at 328. Taking into account the totality of the circumstances, the court of appeals was correct in finding that "defendant was reasonably justified in her belief that she was not free to go." *Id.*

In determining whether the seizure was reasonable and permissible under the fourth amendment, the court of appeals outlined the three constitutionally permissible levels of police stops:

> (1) [A]n officer may approach a citizen at any time and pose questions so long as the citizen is not detained against his will; (2) an officer may seize a person if the officer has an "articulable suspicion" that the person has committed or is about to commit a crime; however, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop"; (3) an officer may arrest a suspect if the officer has probable cause to believe an offense had been committed or is being committed.

*Id.* (quoting *State v. Deitman,* 739 P.2d 616, 617–18 (Utah 1987) (per curiam)).

The court concluded that the present case involved a "level two" stop. The majority found that Stroud had a reasonable "articulable suspicion" that defendant had committed a crime and that the detention did not last for an unreasonable period of time. On that basis, it found no fourth amendment violations and affirmed the conviction. We reexamine this analysis.

 "[W]hen an officer stops a vehicle for a traffic violation, he may briefly detain the vehicle and its occupants while he examines the vehicle registration and the driver's license." *State v. Schlosser,* 774 P.2d 1132, 1135 (Utah 1989) (citing *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). The length and scope of the detention must be " 'strictly tied to and justified by' the circumstances

which rendered its initiation permissible." *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968). In addition, as the State points out, the fourth amendment allows officers to further detain the vehicle and its occupants when the driver fails to produce identification or is not the owner. *United States v. Harris,* 528 F.2d 1327, 1330 (8th Cir.1975); *United States v. Hunter,* 471 F.2d 6, 7 (9th Cir. 1972) (per curiam). The State characterizes this legitimate "further detention" as necessary "to solicit the passenger's aid in identifying the driver and owner of the vehicle in determining whether the driver has the owner's permission to operate the vehicle." However, Stroud solicited from defendant only her identification, which she denied having, and her name and date of birth. At trial, he testified as follows regarding his decision to run a warrants check without further inquiry as to whether the car was stolen or why defendant was in the car:

Q. [From defendant's] name and date of birth what information could dispatch have given you?

A. One, if she had a valid driver's license, and, two, if she had any outstanding warrants.

Q. And if she had a valid driver's license, it would not help you figure out whether the car was stolen, would it?

A. No.

Q. If she had any outstanding warrants, it would not help you figure out if the car was stolen, would it?

A. Possibly.

Q. How so?

A. If she had outstanding warrants for stolen vehicles or any crime incident with stolen vehicles.

Q. Then you would think she might be more likely to be in a vehicle if it were stolen?

A. Possibly.

Q. But you still didn't know the vehicle was stolen.

tion. The court of appeals found that this argument had not been briefed or argued at the trial level. Defendant contends that the argument

was properly preserved. We do not reach this issue.

A. No, ma'am.

Q. And in fact it never turned out to be stolen, did it?

A. No, ma'am.

Q. In actuality—let me strike that. When you make a traffic stop, you routinely check with dispatch names and dates of birth on any occupants of the vehicle, don't you?

A. Not necessarily.

Q. At what point do you do that routinely?

A. If I feel there's some type of crime in the process.

"[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; *State v. Bruce,* 779 P.2d 646, 650 (Utah 1989). While the lack of a registration certificate and the fact that the occupants did not own the car raised the possibility that the car might be stolen, this information, without more, does not rise to the level of an articulable suspicion that the car was stolen. As Judge Orme of the court of appeals stated in his dissent, the "facts are just as consistent with the more likely scenario that the driver borrowed the car from its rightful owner." *State v. Johnson,* 771 P.2d at 329.

Stroud could have, but did not, exercise his right to inquire about the registered owner and how the occupants came into possession of the car. He already knew who the registered owner was, and a satisfactory answer could have abated his suspicion. An unsatisfactory answer could have heightened his suspicion and justified further inquiry. He did not check stolen car records to ascertain if the car had been reported stolen, nor did he know of a report of a stolen car matching the description of this vehicle. Therefore, the leap from asking for the passenger's name and date of birth to running a warrants check on her severed the chain of rational inference from specific and articulable facts and degenerated into an attempt to support an as yet "inchoate and unparticularized suspicion or 'hunch.'" *Terry v. Ohio,* 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

The State relies on *State v. Davis,* 452 So.2d 1208, 1212 (La.Ct.App.1984), to support a detention of a passenger to determine if he or she is licensed to drive, in the event that the driver is unlicensed or unable to drive the vehicle from the scene of the stop. In the instant case, defendant had denied having a license and could not legitimately be detained for the purpose of ascertaining whether she could drive the vehicle. Indeed, the officer ran the warrants and license checks on the passenger before he knew that the driver's license had been suspended. Nor is this a case where an officer detains a passenger in a stopped vehicle because of safety concerns. *See Pennsylvania v. Mimms,* 434 U.S. 106, 119–20 & n. 10, 98 S.Ct. 330, 337–38 & n. 10, 54 L.Ed.2d 331, 342–43 & n. 10 (1977) (Stevens, J., dissenting). Moreover, defendant's remaining in the vehicle was not merely coincidental with the detention of the driver. *See State v. Zimmerlee,* 45 Or.App. 107, 607 P.2d 782 (1980). Stroud testified that he expected defendant to remain, and indeed, his investigation focused on her as well as on the driver.

With the paucity of facts available to him, the officer's detention of the passenger beyond what was reasonably related in scope to the traffic stop was not justified by an articulable suspicion that defendant had committed a crime. Defendant's fourth amendment rights were violated, and the evidence obtained pursuant to the arrest is to be suppressed.

Reversed.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.