**UNITED STATES of America, Plaintiff,**

v.

**Thomas J. JACKSON, Defendant.**

**Civ. A. No. 93–10013–01.**

United States District Court,
D. Kansas.

May 24, 1993.

Kim Fowler, Asst. U.S. Atty., Wichita, KS, for plaintiff.

Charles O'Hara, Wichita, KS, for defendant.

## ORDER

BELOT, District Judge.

The defendant has filed a motion to suppress cocaine seized following a high speed car chase and subsequent foot chase involving the defendant and Wichita police officers. After hearing the evidence, the court finds the pertinent facts to be as follows:

On January 27, 1993, at 3:50 p.m., the Wichita Police Department received an anonymous telephone call. The caller reported that an individual named Tommy had left Wichita on Friday, January 22, 1993, had gone to Los Angeles and then returned on Tuesday, January 26, 1993 with ten kilos of cocaine. The caller related that he or she was inside apartment 201 at Sixteenth and Piatt and saw the cocaine "bricks" in the apartment. The caller reported that Tommy was getting ready to "cook some up" and that Tommy would be at the apartment or travelling back and forth between his other house.

The caller also indicated that Tommy was a black male, 29 years of age, approximately 5'9″ tall weighing 200 or more pounds. The caller stated that Tommy had been arrested in Wichita several weeks earlier because he ran from the police and that he "threw out the cocaine before he got stopped." The caller indicated that Tommy was armed and would run from the police if stopped, that he usually kept three ounces of cocaine hidden in a glove in the car and that he was armed with a .45 caliber semi-automatic pistol, a 9 millimeter Tech–9 and a sawed-off shotgun. Finally, the caller indicated some association between Tommy and a blue Jeep with plastic

windows that "doesn't belong to him." The caller gave the Jeep's license number.

The aforesaid information was quickly relayed to narcotics detective Terry B. Fettke. A blue Jeep matching the description and license number given by the anonymous tipster was located at the Sixteenth and Piatt address. Through investigation, the tipster's statements about "Tommy's" recent arrest were quickly corroborated and "Tommy" was identified as the defendant, Thomas J. Jackson. Detective Fettke obtained a "mug shot" of the defendant and decided to set up surveillance at the apartment house at Sixteenth and Piatt. In the process, Detective Fettke spoke with uniformed officers Johnson and Ojile, who were in a marked police car. He advised them about the tipster's information, showed them the mug shot of the defendant and indicated he might need their help.

Detective Fettke setup surveillance a short distance from the Sixteenth and Piatt address. At approximately 5:40 p.m., two hours after the tip had been received, he was advised by another surveilling officer that a black Volvo bearing California license plates had arrived at the Sixteenth and Piatt address and that a black male had gotten out of the Volvo and had entered the apartment house. Shortly thereafter, the black male returned to the Volvo and drove off. As the Volvo passed Detective Fettke's location, Detective Fettke was able to determine that the driver of the Volvo was the defendant.

Detective Fettke was driving an "under cover" car which did not have flashing red lights. He began following the defendant with the intent to see whether he might make a delivery. Within a short distance, he observed the defendant looking around and driving erratically. The Volvo then made a sudden turn without signalling. At this point, Detective Fettke (or perhaps the officer riding with him) directed Officer Johnson by radio to stop the defendant. Johnson turned on the flashing lights of his police car, pulled up behind the defendant and a high speed chase ensued which ended when the defendant wrecked the Volvo. In a foot chase which followed, the defendant dropped a stuffed animal which contained crack cocaine.

Several of the officers involved in the surveillance and chase testified and, as usually happens, there were some discrepancies between the testimony of the officers as well as differences between their in-court testimony and what is contained in their reports relating to what Detective Fettke told Officer Johnson about the reasons for stopping the defendant. No point would be served in detailing the discrepancies. To the extent they exist, the court finds that they do not diminish the officers' credibility on the important facts. What is important is that the evidence produced no dispute regarding the facts known or deduced by Detective Fettke as the result of the investigation which substantially corroborated the anonymous tip.

The defendant does not contend that the information given by the tipster was inadequately corroborated. Instead he claims that Officer Johnson's actions in attempting to stop him were pretextual because Detective Fettke supposedly told Johnson "If [Johnson] caught Thomas in the vehicle moving, that [Johnson was] to get a traffic charge on [Thomas], pull [Thomas] over and advise officer Fettke." In making this argument, the defendant focuses on the fact that Officer Johnson did not actually see the defendant commit any traffic violations before he attempted to stop him and hence, the attempted stop was a pretext. This argument is legally erroneous.

The stopping of a vehicle and the detention of its driver constitutes seizure within the meaning of the Fourth Amendment. However, police may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion that criminal activity may be afoot, even if the officer lacks probable cause. *United States v. $83,900 in U.S. Currency*, 774 F.Supp. 1305, 1313 (D.Kan.1991). A pretextual stop occurs only when the officer lacks reasonable suspicion.

> A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or interrogate a person for an unrelated serious crime for which they do not have the reasonable suspicion to support a stop. The

702

classic example ... occurs when an officer stops a driver for a minor traffic violation in order to investigate a hunch that the driver is engaged in illegal drug activity. *United States v. Guzman*, 864 F.2d 1512, 1515 (10th Cir.1988). A sufficiently corroborated anonymous tip can provide reasonable suspicion for police to make an investigatory stop of a vehicle. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). A pretextual stop occurs when the officer deviates from his usual practice. *United States v. Werking*, 915 F.2d 1404, 1408 (10th Cir.1990). Whether a stop is pretextual is determined by an objective analysis of all the facts and circumstances leading to the stop, not by a subjective inquiry into the officer's intent. *United States v. Corral*, 899 F.2d 991, 994 (10th Cir.1990).

■ This case does not involve a pretextual stop. The fact that Officer Johnson did not see the defendant commit a traffic violation before attempting to stop him does not render Johnson's attempt a pretext. Detective Fettke testified that it was customary procedure to enlist the aid of other officers to stop a vehicle. Johnson was entitled to rely on Fettke's direction to stop the defendant and only if Fettke lacked reasonable suspicion can Johnson's actions be viewed as a pretext. The court finds that as a result of his corroboration of the anonymous tip, Detective Fettke had *at least* reasonable suspicion that the defendant was engaged in criminal activity involving illegal drugs. Detective Fettke could have stopped the defendant without waiting for him to commit a traffic violation. His decision not to do so was objectively reasonable. His subsequent request that Officer Johnson stop the defendant likewise was objectively reasonable and in keeping with his customary practice.

■ Even assuming, *arguendo*, that the attempt to stop defendant was pretextual and not supported by probable cause, defendant's motion would still fail. A "seizure" within the meaning of the Fourth Amendment does not occur at a time when a fleeing suspect has refused to yield to the officer's show of authority, but only when the suspect has yielded or the officer has actually applied physical force to restrain the fleeing suspect.

*California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); *United States v. Morgan*, 936 F.2d 1561, 1566–67 (10th Cir.1991). Thus, it is irrelevant whether the officers had probable cause to *attempt* to stop defendant at the time when they made their initial show of authority, because defendant "was not seized until he was tackled." 499 U.S. at ——, 111 S.Ct. at 1548, 113 L.Ed.2d at 699. At the time defendant was tackled, defendant was fleeing by foot from a car accident that had followed a high-speed car chase with a police vehicle down neighborhood streets. Officer Johnson had more than sufficient reason of his own to "seize" defendant, as that term applies to the Fourth Amendment. By the time he was "seized," the defendant had already thrown away the stuffed animal containing the drugs.

Accordingly, the defendant's motion to suppress (Doc. 18) is denied.

IT IS SO ORDERED.