**STATE of Utah, Plaintiff and Respondent,**

v.

**Pamela Malan HIGGINS, Defendant and Petitioner.**

No. 920494.

Supreme Court of Utah.

Nov. 10, 1994.

R. Paul Van Dam, Atty. Gen., Todd A. Utzinger, Asst. Atty. Gen., Salt Lake City, for plaintiff.

Lisa J. Remal, Joan C. Watt, Salt Lake City, for defendant.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

STEWART, Associate Chief Justice:

The Utah Court of Appeals upheld the conviction of Pamela Higgins for attempted possession of a contraband substance. *State v. Higgins*, 837 P.2d 9 (Utah Ct.App.1992), *cert. granted*, 857 P.2d 948 (Utah 1993). The case is now here on certiorari to review that court's decision sustaining the trial court's refusal to suppress cocaine found in Higgins' possession at the time of her arrest. She contends that the court of appeals erred in holding that (1) she was not "seized" under the Fourth Amendment when police ran driver's license and warrants checks that revealed an outstanding warrant for her arrest, resulting in her arrest, and that (2) cocaine obtained from a search incident to her arrest was admissible. *Id.* at 12.

On August 21, 1989, at about 12:45 a.m., Salt Lake City Police officers stopped a car matching the description of a vehicle whose driver had been reported for stealing gas from a 7–Eleven convenience store. Jim Seeley was driving the car, and Higgins was the only passenger. When stopped by the police, Seeley acknowledged that he had forgotten to pay and agreed to return to the store and pay for the gas. While Seeley was paying for the gas, the police ran a warrants check on him that revealed an outstanding arrest warrant, and the officers arrested him. To save Seeley from having his car towed away and impounded, Seeley and the officers agreed to allow Higgins to drive the car home if she would do so.

Officer Michael Jensen approached Higgins and, for the first time, spoke to her. He informed her that Seeley was under arrest and told her that the car would not be impounded if she had a valid driver's license and would agree to drive the car home. Higgins agreed and responded that she had a driver's license but did not have it with her. Officer Jensen then asked Higgins for her name and date of birth to verify her license. Driver's license and warrants checks revealed that Higgins' driver's license had been suspended and that she had an outstanding warrant for her arrest. She was arrested, and in a search incident to the arrest, cocaine was found in her athletic bag.

Prior to trial, Higgins moved to suppress the cocaine as illegally seized evidence on the ground that she had been unreasonably seized when the car was first stopped. The trial court ruled that Higgins was not seized for Fourth Amendment purposes and denied the motion. She entered a conditional guilty plea to attempted possession of a controlled substance, reserving her right to appeal the propriety of the cocaine seizure. *See State v. Mabe*, 864 P.2d 890, 892 (Utah 1993); *see*

*also State v. Sery,* 758 P.2d 935, 938 (Utah Ct.App.1988).

On appeal, the court of appeals held that Higgins was not unreasonably seized by the initial stop of the car and that Higgins was not seized at the 7–Eleven when the officers ran the driver's license and warrants checks on her. *Higgins,* 837 P.2d at 12.

Higgins now contends that the court of appeals erred in ruling that she was not seized when the officers approached her after arresting Seeley to see if she would drive his car away. Her argument is that she was seized when the car was initially stopped and that she remained continuously seized for all practical purposes until her formal arrest. The State responds that either she was never seized, or because she was free to leave after Seeley was arrested and because she freely consented to operate the car, she was not seized at the time the police ran the driver's license and warrants checks on her which led to her arrest and search.

■ Not every encounter between a police officer and a citizen is a seizure. *Florida v. Bostick,* 501 U.S. 429, 437, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991). A person is seized under the Fourth Amendment when, considering the totality of the circumstances, the police conduct would have communicated to a reasonable person that the person was not free to decline the officer's requests or otherwise terminate the encounter and go about his or her business. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *United States v. Sandoval,* 29 F.3d 537, 540 (10th Cir.1994); *accord Florida v. Royer,* 460 U.S. 491, 502, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983); *State v. Ramirez,* 817 P.2d 774, 786 (Utah 1991).

■ Although Higgins was merely a passenger in an automobile that was stopped by the police to investigate a complaint against the driver only, we will assume, as she argues, that she was seized by the initial stop of the car. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979); *State v. Haworth,* 106 Idaho 405, 679 P.2d 1123, 1124 (1984); *see also State v. Johnson,* 805 P.2d 761, 764 (Utah 1991). Her

seizure arguably continued during the trip back to the 7–Eleven but was not unreasonable because the officers were entirely justified in stopping the car. *See State v. Zimmerlee,* 45 Or.App. 107, 607 P.2d 782, 784 (1980); *cf. State v. Johnson,* 805 P.2d 761, 764 (Utah 1991). The seizure terminated once Higgins was free to go about her business.

■ Once a person is seized for Fourth Amendment purposes, the seizure does not cease simply because the police formulate an uncommunicated intention that the seized person may go his or her way. For the seizure to end, it must be clear to the seized person, either from the words of an officer or from the clear import of the circumstances, that the person is at liberty to go about his or her business. *United States v. Sandoval,* 29 F.3d 537, 540–41 (10th Cir.1994). Here, it is clear, as a matter of law, from Officer Jensen's inquiring if Higgins wished to drive Seeley's car away that Higgins was no longer seized, assuming, arguendo, that she continued to be seized until then.

■ That conclusion is supported by the rule, recognized by other courts, that when the driver of a car is arrested and a passenger agrees to drive the car away to avoid impoundment, the passenger is no longer seized under the Fourth Amendment. *State v. Mennegar,* 114 Wash.2d 304, 787 P.2d 1347, 1352 (1990); *People v. Spicer,* 157 Cal. App.3d 213, 218, 203 Cal.Rptr. 599, 603 (1984). In *Mennegar,* after a car's driver was arrested, an officer, with the driver's approval, asked a passenger if he would drive the car to avoid its impoundment. When the passenger, Mennegar, agreed, an officer asked for his driver's license and ran a check that revealed an outstanding arrest warrant. Mennegar was arrested, and in a search incident to the arrest, the officer discovered cocaine. In rejecting Mennegar's claim of a Fourth Amendment violation, the court stated:

> While engaged in an attempt to find an alternative to impounding the vehicle, the officer was acting within his proper caretaking function in checking to see if the passenger's driver's license was still valid. The conversation between the officer and

passenger was freely entered into and the response to the request for the license was voluntary and consensual; hence, it did not constitute a seizure.

*Mennegar*, 787 P.2d at 1352 (footnote omitted).

In *Spicer*, the driver of an automobile was arrested. Before asking a passenger if she would drive the vehicle to avoid impoundment, an officer asked to see her identification, anticipating that she would agree to drive the car. When the passenger opened her purse, the officer saw the butt of a handgun and arrested her. Noting that it was especially pertinent that the officer did not explain to the passenger his reason for requesting her driver's license, the court held that the passenger was seized. 203 Cal.Rptr. at 602. The court stated, however, "Had Officer Mack first established [that the driver] desired the car to be turned over to Ms. Spicer and Ms. Spicer was willing to take that responsibility and then requested Ms. Spicer's driver's license, we would have no difficulty in finding a consensual encounter." *Id.* at 604 n. 4.

The facts here are similar to those in *Mennegar* and to those facts that the California court said would have resulted in a consensual encounter, not a seizure, in *Spicer*. Once Seeley, the car's driver, was arrested, the passenger, Higgins, was free to go about her own business. When she was asked if she wanted to drive Seeley's car away, the colloquy was entirely consensual and she was at liberty to terminate the encounter as she chose. Higgins could choose to drive the car or not, because she was no longer seized. Even though the colloquy between Higgins and Officer Jensen was initiated by the officer, the request for Higgins to drive Seeley's car originated with Seeley and was merely conveyed by the police. Nothing in all this even remotely suggests that the officer's tone or language "indicat[ed] that compliance with the officer's request might be compelled." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

■ As a condition of Higgins' being allowed to take Seeley's car, she had to produce a valid driver's license. Because she did not have her license with her, it was reasonable for Officer Jensen to request Higgins' name and date of birth to determine whether she had a valid driver's license.[1] Given the circumstances, nothing in that conduct indicates any basis for finding a seizure.

■ Higgins relies on *State v. Johnson,* 805 P.2d 761 (Utah 1991), to argue that the officer's inquiry concerning her name and date of birth was not justified and unreasonably expanded her detention. *Johnson* held that the scope of a detention in that case went beyond what was reasonably related to a traffic stop and was not justified by an articulable suspicion that the defendant had committed a crime. *Id.* at 764. Here, Officer Jensen's request for Higgins' name and birth date was not pursuant to a traffic violation. Officer Jensen expected Higgins to wait during the check, not because she was the focus of a criminal investigation, but because she said she wanted to drive the car away, and he had an obligation to verify that she was a licensed driver to whom he could reasonably entrust Seeley's vehicle.[2]

---

1. Higgins argues that because it is illegal to drive without a driver's license on one's person, she could not drive and Officer Jensen was not justified in running the check. This is not persuasive because it is a defense to a charge of driving without a license "that the person charged produces in court a license certificate issued to him and valid at the time of his citation or arrest." Utah Code Ann. § 53–3–217(2).

2. In her brief, Higgins argues that it was unlawful for Officer Jensen to request a warrants check on her when he checked the driver's license.
   Running a warrants check in addition to a driver's license check is permissible under the Fourth Amendment if the warrants check does not significantly extend the period of detention beyond that reasonably necessary to effectuate the purpose of the initial justified stop. *See State v. Lopez,* 873 P.2d 1127 (Utah 1994); *People v. McGaughran,* 25 Cal.3d 577, 159 Cal.Rptr. 191, 195, 601 P.2d 207, 211 (1979); *see also State v. Figueroa–Solorio,* 830 P.2d 276, 280 (Utah Ct. App.1992). Unlike *State v. Johnson,* 805 P.2d 761 (Utah 1991), and *State v. Hansen,* 837 P.2d 987 (Utah Ct.App.1992), the officers in this case had a legitimate reason for asking Higgins for her name and date of birth, and the running of the driver's license check was permissible. Higgins has not shown that the warrants check significantly extended the period of time reasonably

Because she was not seized when the warrants check was run, the evidence subsequently obtained from a search incident to Higgins' arrest was admissible.

Affirmed.

ZIMMERMAN, C.J., HOWE and DURHAM, JJ., and GREGORY K. ORME, Court of Appeals Judge, concur.

RUSSON, J., having disqualified himself, does not participate herein; GREGORY K. ORME, Court of Appeals Judge, sat.

necessary to run the driver's license check. Thus, neither check was unreasonable in scope. We do not address the validity of a warrants check in the absence of a driver's license check, nor do we decide its validity without some other concomitant basis for running the warrants check.