STATE of Utah, Plaintiff and Appellee,

v.

**Gordon Ray HAM, Defendant and Appellant.**

No. 950062–CA.

Court of Appeals of Utah.

Jan. 11, 1996.

Solomon J. Chacon and Gary L. Bell (argued), Salt Lake City, for Appellant.

Thomas B. Brunker, Asst. Atty. Gen., and Jan Graham, Atty. Gen., Crim. Appeals Div., Salt Lake City, for Appellee.

Before DAVIS, Associate P.J., ORME, P.J., and GREENWOOD, J.

## OPINION

DAVIS, Associate Presiding Judge:

Defendant Gordon Ray Ham appeals his conviction of possession of a controlled substance with the intent to distribute, a second degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(iv) (Supp.1995). We reverse.

## I. FACTS

On the day in question, defendant was on probation because of a felony conviction related to sexual misconduct. As a condition of his probation, defendant signed a probation agreement which contained the following "Conditions of Probation":

> 2. I shall permit visits to my place of residence ... as required by the Department of Corrections for the purpose of ensuring compliance with the conditions of probation.
>
> . . . .
>
> 8. I agree to allow an agent of the Department of Corrections to search my person, residence, vehicle or any other property under my control, without a warrant, any time day or night, upon reasonable suspicion as ascertained by an agent of the

Department of Corrections to ensure compliance with the conditions of probation. Another condition of defendant's probation was that he abstain from alcohol.

On October 13, 1994, two agents from Adult Probation and Parole, Scott McCullough and Craig Hillam, visited defendant at his residence to conduct a routine "home visit." The agents knocked on defendant's door, were greeted by an unknown woman, and waited inside the front door as she informed defendant that he had visitors. Agent McCullough told defendant that they were there for a routine visit to ensure defendant's compliance with the "no alcohol" provision in his probation agreement. Although the agents had no reasonable suspicion that defendant had violated any of the terms of his probation agreement, Agent McCullough stated, "We need to look in the refrigerator for alcohol."[1] Although neither agent could recall defendant's precise response, both testified that defendant responded affirmatively. All parties agree that at no time did defendant object to Agent McCullough's request.

Agent McCullough looked in defendant's refrigerator and found nothing of note; however, Agent Hillam found two bottles of alcohol in defendant's separate, free-standing freezer. After reminding defendant that this was a violation of his probation agreement, Agent Hillam poured the alcohol down the kitchen drain.

At this time, the agents believed that there might be additional alcohol violations and requested that defendant escort them on a cursory "walk through" of defendant's residence. Nothing was discovered during the initial, cursory search of the main floor. However, upon reaching the basement, Agent McCullough observed a cooler which was filled with ice and fourteen cans of beer. As Agent McCullough was securing the cooler, Agent Hillam walked into a back storage room. After turning the light on, Agent Hillam discovered a mirror holding a white

---

1. At oral argument, the State relied on the fact that both agents testified that Agent McCullough said "We need to look in the refrigerator, *okay?*" (Emphasis added.) The trial court did not include "okay" in its findings of fact and the record shows that both agents also testified that it was a habit of Agent McCullough's to end sentences with "okay?," not changing a declaration to an interrogatory.

powdery substance, razor blades, and devices which are commonly used for ingesting cocaine. Believing the white powdery substance to be cocaine, Agent Hillam placed defendant under arrest.

After defendant was arrested, but before he was given any Miranda warnings, Agent Hillam asked defendant whether other drugs were in the house. Defendant responded that there were mushrooms in a cup in the storage room. When questioned about the white powdery substance, defendant confirmed that it was cocaine. At this point, defendant was read his rights by Agent Hillam.[2] Agent Hillam asked defendant if he understood those rights; defendant responded affirmatively and also agreed to talk to the agents without an attorney present.

After defendant was given his Miranda warnings, Agent Hillam returned to the storage room to retrieve the mushrooms. During this time, Agent McCullough questioned defendant regarding additional drugs in the house.[3] Defendant revealed that there was cocaine in a closet locked in a chest bolted underneath the stairs and gave Agent McCullough a key to unlock the chest. Located inside were two Crown Royal bags containing cocaine.

Defendant was ultimately charged with possession of cocaine with intent to distribute, a second degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(iv) (Supp. 1995), and possession of psilocybin mushrooms, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(I) (Supp. 1995). On November 10, 1994, defendant filed a motion to suppress the evidence, claiming that the agents did not have either reasonable suspicion that defendant had violated his probation agreement or defendant's consent to search his residence. Thus, defendant contended that all evidence seized was done so in violation of his constitutional rights.

In a memorandum decision dated November 22, 1994, the trial court denied defendant's motion. The trial court concluded that

1. The search of the freezer which revealed the two bottles of liquor was a lawful reasonable search because the defendant agreed in the probation agreement he signed to allow probation officers to search his residence for evidence of violations of probation, and because the defendant consented to a search of his refrigerator, and by implication, his freezer.

2. Once the liquor was discovered, the probation officers had a "reasonable suspicion" to conduct a more intrusive search of the house pursuant to *State v. Velasquez,* 672 P.2d 1254 (Utah 1983).

3. The additional discovery of the beer in the cooler in the downstairs of the house further supported a "reasonable suspicion" justifying the scope of the search which led to the discovery of the defendant's possession of cocaine.

4. After his arrest, the defendant was subjected to custodial interrogation in violation of Miranda, but the evidence that was found subsequent to the defendant's arrest is not subject to suppression because its discovery was inevitable in that the probation officers would have conducted the search of the residence even had the defendant not made any statements. *See Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377. (1984).

Based on the trial court's denial of his motion to suppress the evidence, defendant entered a conditional guilty plea, pleading guilty to the possession of cocaine with intent to distribute charge and, on the State's motion, the possession of psilocybin mushrooms charge was dismissed. Defendant was sentenced on January 23, 1995, to the statutory prison term of one to fifteen years and was fined $4625 by the trial court. Defendant was immediately taken to the Utah State Prison.

**2.** Although the testimony from Agent McCullough and Agent Hillam is conflicting regarding when defendant was given his Miranda warnings, they both agree that they were given at the latest before he informed the agents that there was additional cocaine hidden in a chest underneath the stairs.

**3.** Agent McCullough told defendant, "We are going to search the residence. Help yourself. If there's anything in here tell us where it's at."

Defendant filed a notice of appeal on January 23, 1995. On February 17, 1995, defendant filed an application for issuance of a certificate of probable cause with the trial court requesting that he be released from prison pending the outcome of the appeal. Based on the parties' stipulation, the trial court granted the application for certificate of probable cause on March 9, 1995. Notwithstanding, because defendant was a probationer at the time the events transpired, his probation was revoked and he remains incarcerated.[4]

## II. ISSUES

Although several issues are raised on appeal, we need only address the following: (1) whether the trial court erred in concluding that defendant's probation agreement authorized the agents to search his refrigerator and freezer; (2) whether the trial court's finding that defendant consented to the search was correct, and, if so, whether defendant gave his consent voluntarily; and (3) if the search of the refrigerator was illegal, whether defendant's alleged second consent was sufficiently attenuated from the prior illegality, which would make the cocaine found underneath the stairs admissible into evidence.

## III. ANALYSIS

### A. Scope of Probation Agreement

■ Pursuant to defendant's probation agreement, defendant agreed to routine home visits by probation agents such as Agent McCullough and Agent Hillam "for the purpose of ensuring compliance with the conditions of probation." Furthermore, defendant also agreed to warrantless searches of his residence upon an agent's reasonable suspicion that defendant had violated the terms of his probation agreement.

The trial court held that "[t]he search of the freezer which revealed the two bottles of liquor was a lawful reasonable search because the defendant agreed in the probation

agreement he signed to allow probation officers to search his residence for evidence of violations of probation." However, the probation agreement authorizes a warrantless search only upon reasonable suspicion; both Agent McCullough and Agent Hillam testified that they did not have reasonable suspicion that defendant had violated any of the terms of his probation agreement. Thus, defendant did not agree in advance to an unfettered right to search at any time for absolutely no reason and, accordingly, the terms of the probation agreement did not give the agents the authority to conduct a warrantless search without either reasonable suspicion or defendant's consent.

A similar analysis was conducted in *State v. Martinez*, 811 P.2d 205 (Utah App.1991). At issue in *Martinez* was whether the probationer had validly consented to a search of his residence because he was not present at the time his probation officer searched the apartment. The probationer's probation agreement contained two relevant provisions, one identical to the provision in the case at bar:

> 8. I agree to allow an agent of the Department of Corrections to search my person, residence, vehicle or any other property under my control, without a warrant, any time of day or night, upon reasonable suspicion as ascertained by an agent of the Department of Corrections to ensure compliance with the conditions of probation.
>
> . . . .
>
> 14. [I agree to] [s]ubmit person, residence, and vehicle to search for drugs.

*Id.* at 209. While the court held that these two provisions indicated the probationer's consent to the search, "such consent was premised on the probation officer's reasonable suspicion of [a] probation violation."[5] *Id.*

■ Even if defendant's probation agreement had not required reasonable suspicion and even though "probationers 'do not enjoy "the absolute liberty to which every

4. Defendant is not appealing the probation revocation ruling.

5. The court found that the probation officer had reasonable suspicion to believe that the probationer had violated the terms of his probation agreement.

citizen is entitled," ' " *id.* (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 874, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972))), the Fourth Amendment to the United States Constitution requires that a probation officer have reasonable suspicion before commencing a warrantless search of a probationer's residence. *State v. Velasquez,* 672 P.2d 1254, 1260 (Utah 1983). This requirement is applicable regardless of the language contained in defendant's probation agreement. *Id.* Accordingly, the trial court's conclusion that defendant's probation agreement provided the necessary consent to search the premises without reasonable suspicion was in error.

## B. Consent

■ Defendant also challenges the trial court's finding that defendant consented to the search of the refrigerator. Defendant contends that he did not consent to the search and, even if he did, his consent is invalid under the Fourth Amendment to the United States Constitution because it was not voluntary.[6]

■ When determining whether a defendant actually consented to a search, we will not upset the trial court's factual findings unless they are clearly erroneous. *State v. Delaney,* 869 P.2d 4, 8 (Utah App.1994). We employ the same standard when reviewing whether a consent was voluntary and review the trial court's "ultimate conclusion that a consent was voluntary or involuntary" for correctness. *State v. Thurman,* 846 P.2d 1256, 1271 (Utah 1993).

In support of his assertion that he did not consent to the agents' search of the refrigerator, defendant offers only his testimony at the suppression hearing which, we note, is not wholly inconsistent with that of the agents.[7] However, both Agent McCullough and Agent Hillam testified that defendant did in fact consent to the search. While the testimony is conflicting, " 'it is the prerogative of the trial court to evaluate the evidence and choose what testimony to believe.' " *Delaney,* 869 P.2d at 8 (quoting *State v. Harmon,* 854 P.2d 1037, 1040 n. 1 (Utah App.), *cert. granted,* 868 P.2d 95 (Utah 1993)). The trial court was entitled to discredit defendant's testimony, which it did as is illustrated by its findings of fact. After reviewing the record, we conclude that the trial court's finding was not clearly erroneous and therefore affirm it on appeal.

■ Defendant also argues that he did not voluntarily consent to the search of his refrigerator. A warrantless search is a per se Fourth Amendment violation unless the State can establish one of the " 'few specifically established and well-delineated exceptions.' " *State v. Arroyo,* 796 P.2d 684, 687 (Utah 1990) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (citations omitted)); *accord State v. Sepulveda,* 842 P.2d 913, 918 (Utah App.1992). One of the clearly established exceptions is a consent. *Arroyo,* 796 P.2d at 687; *Sepulveda,* 842 P.2d at 918.

■ A search following a consent, however, is valid only if "(1) the consent was voluntarily given, and (2) the consent was not obtained by police exploitation of the prior illegality."[8] *Harmon,* 854 P.2d at 1040; *ac-*

6. While defendant claims that he is advancing this argument under both the Fourth Amendment to the United States Constitution and Article 1, section 14 of the Utah Constitution, he provides no separate analysis for the state constitutional argument and relies upon cases which resolve only the Fourth Amendment issue. Therefore, we confine our analysis of defendant's claim to the Fourth Amendment. *See State v. Carter,* 812 P.2d 460, 462 n. 1 (Utah App.1991) (stating separate state constitutional argument will not be addressed when "[d]efendant offers no rationale as to why our analysis of the issues ... should ... diverge from the federal analysis"), *cert. denied,* 836 P.2d 1383 (Utah 1992); *State v. Arroyo,* 770 P.2d 153, 154 n. 1 (Utah

App.1989) (stating "three line conclusory statement" as to application of state constitution insufficient to warrant discussion by court), *rev'd on other grounds,* 796 P.2d 684 (Utah 1990).

7. When questioned regarding his consent, defendant testified that he "simply complied" with the agent's request and did not "offer any resistance or ... voice any objection."

8. There is no assertion that the agents were not properly where they were entitled to be pursuant to the "routine home visit" provision of defendant's probation agreement.

cord *Arroyo,* 796 P.2d at 688. It is the State's burden to prove that a consent was voluntarily given. *Thurman,* 846 P.2d at 1263; *State v. Robinson,* 797 P.2d 431, 437 (Utah App.1990). If the State fails to meet this burden, the evidence is deemed inadmissible against the defendant. *Robinson,* 797 P.2d at 437.

■■■■■ Whether a consent was voluntarily given " 'is a question of fact to be determined from the totality of all the circumstances.' " *Robinson,* 797 P.2d at 437 (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973)). When reviewing the totality of the circumstances, the reviewing court must evaluate "the specific characteristics of the accused and the details of the police conduct involved." *Carter,* 812 P.2d at 467; *accord Thurman,* 846 P.2d at 1263.

This court has established an analytical framework for determining whether the State has met its burden of proving that a consent was voluntarily given:

"(1) There must be clear and positive testimony that the consent was 'unequivocal and specific' and 'freely and intelligently given'; (2) the government must prove consent was given without duress or coercion, express or implied; and (3) [when evaluating these first two standards, we] indulge every reasonable presumption against the waiver of fundamental constitutional rights and there must be convincing evidence that such rights were waived."

*Carter,* 812 P.2d at 467 (quoting *State v. Marshall,* 791 P.2d 880, 887–88 (Utah App.), *cert. denied,* 800 P.2d 1105 (Utah 1990) (quoting *United States v. Abbott,* 546 F.2d 883, 885 (10th Cir.1977))); *see also United States v. Medlin,* 842 F.2d 1194, 1197 (10th Cir.1988).[9]

The Utah Supreme Court has set out those factors necessary to establish the absence of coercion or duress:

1) the absence of a claim of authority to search by the officers; 2) the absence of an exhibition of force by the officers; 3) a

mere request to search; 4) cooperation by the [defendant]; and 5) the absence of deception or trick on the part of the officer.

*State v. Whittenback,* 621 P.2d 103, 106 (Utah 1980).

Defendant claims his consent was not voluntary because the agents' testimony was not "clear and positive . . . that the consent was 'unequivocal and specific' and 'freely and intelligently given.' " *Carter,* 812 P.2d at 467 (citations omitted). We agree. During direct examination, Agent McCullough testified as follows:

Q How did [defendant] respond to your statement that you needed to go [look] in the refrigerator for alcohol?

A [Defendant] [d]id not respond. I do not remember any particular conversation, exactly what was said, that he did not have any objection, and I believe he said go ahead, but I do not recall specifically.

. . . .

Q Did [defendant] make any verbal response at all to you when you told him you needed to look in the refrigerator?

A I do not recall a specific response. Mr. Ham was fully cooperative during the entire time.

Q I want you to focus on this point in time.

A I do not remember particularly what was said, no, but there was—I know that there was nothing said negatively to us looking in the fridge.

Agent Hillam then testified regarding the same conversation with defendant:

Q Did you hear Agent McCullough request permission to look in a refrigerator or a freezer?

A Yes, he did.

Q Did Mr. Ham respond to his request?

A To the best—it was affirmative. I don't know the exact words. If it would have been a "no," we probably would have

---

9. Although the trial court did not make a specific finding regarding the voluntariness of defendant's consent, that does not preclude this court from doing so. The record at the suppression hearing is sufficiently detailed and complete to allow us to determine whether the State has met its burden of proof on this issue. *See State v. Thurman,* 846 P.2d 1256, 1273 (Utah 1993) (stating that record was sufficient to make factual determination).

stopped and talked with him an additional amount more, as my policy would be.

Q Do you remember there being an affirmative response of some sort?

A Yes, there was. I believe there was.

Q Are you certain about that?

A It was, or we would not have continued.

It is evident from the agents' testimony that they themselves are not sure whether defendant gave any type of consent at all. Agent McCullough initially testified that defendant "did not respond" to Agent McCullough's announcement that he was going to search the refrigerator for alcohol, but then suggested that defendant "might have" said, "Go ahead." Agent Hillam's testimony was no more articulate. When asked whether defendant responded to Agent McCullough's declaration that he needed to search the refrigerator for alcohol, Agent Hillam testified that he "believe[d] there was" a response. Undoubtedly, this is not "clear and positive" testimony which is necessary to meet the State's burden that a defendant unequivocally and specifically consented to a search.

■ Additionally, even if the testimony regarding defendant's consent could be construed as clear and positive, there was no genuine request for a search. Agent McCullough merely advised defendant that the agents were about to commence a search of defendant's refrigerator for alcohol. The statement, "We need to search the refrigerator for alcohol" is clearly a claim of authority to search by the agents, supporting the existence of coercion or duress. *See Whittenback,* 621 P.2d at 106.

Accordingly, the State has not met its burden of establishing that defendant voluntarily consented to the search of his refrigerator and, as a result, we conclude the search was illegal and in violation of defendant's Fourth Amendment rights. Because the search of the refrigerator was invalid, the subsequent search of defendant's residence was also unlawful.[10] Therefore, any evidence seized is inadmissible against defendant.

### C. Attenuation

■ The State claims that if we hold that the search of the refrigerator (and, therefore, the freezer and basement) was illegal, "defendant subsequently consented to the search of the closet under the stairs that led to the cocaine on which his conviction is based[,]" thus purging the prior illegality. However, even if we were to assume defendant's subsequent "consent" to search was voluntary,[11] it is still necessary to determine whether the consent was obtained as a result of the agent's exploitation of their antecedent illegality.[12]

■ Even if a consent to search is deemed voluntary, it may still be invalid because it was "obtained by police exploitation of [a] prior illegality." *Harmon,* 854 P.2d at 1040; *accord Arroyo,* 796 P.2d at 688; *State v. Castner,* 825 P.2d 699, 704 (Utah App. 1992). "When the prosecution attempts to prove voluntary consent after an illegal police action ..., the prosecution 'has a much heavier burden to satisfy than when proving consent to search' which does not follow police misconduct." *Arroyo,* 796 P.2d at 687–88 (quoting *United States v. Melendez–Gonzalez,* 727 F.2d 407, 414 (5th Cir.1984) (citations omitted)); *accord Robinson,* 797 P.2d at 437 n. 7. This is because in addition to proving a

10. Even if the search of the refrigerator was legal, the agents found nothing which would have given them reasonable suspicion to search further. We note the State has argued that if the search of the refrigerator was legal, the search of the freezer was within the scope of the search and, therefore, the liquor found in the freezer gave the agents reasonable suspicion to search the rest of defendant's residence. Notwithstanding the State's argument, because we find that defendant did not voluntarily consent to the search, we need not address the issue of the scope of defendant's consent.

11. Because we decide that there was not sufficient attenuation between the prior illegality and defendant's alleged second consent, we need not reach the issue of whether there was a "separate" consent and whether it was voluntary.

12. The trial court did not enter any findings or conclusion regarding the issue of attenuation. However, we find that the record is sufficiently complete to make this determination. *See State v. Castner,* 825 P.2d 699, 704 (Utah App.1992).

valid and voluntary consent to search, the State must also establish the existence of intervening factors which prove that the consent was sufficiently attenuated from the police misconduct. *Melendez–Gonzalez,* 727 F.2d at 414.

 It is well settled that evidence is not subject to exclusion if " 'the connection between the illegal police conduct and the discovery and seizure of the evidence is "so attenuated as to dissipate the taint." ' " *Castner,* 825 P.2d at 704 (citations omitted). The Utah Supreme Court has established several factors that the reviewing court must examine in evaluating the attenuation issue: temporal proximity of the initial illegality and the consent in question, the presence of intervening circumstances, and the purpose and flagrancy of the illegal misconduct. *State v. Arroyo,* 796 P.2d at 690–91 n. 4; *see also State v. Sims,* 808 P.2d 141, 150 (Utah App.1991), *cert. dismissed,* 881 P.2d 840 (Utah 1994).

The record shows that a very short time period had expired between the initial illegal search and the second "request" for a consent to search. Additionally, absolutely no intervening events occurred; defendant's consent was procured during the ongoing illegal search. Finally, the agents were obviously seeking evidence demonstrating that defendant had violated his probation agreement and were apparently unconcerned about the provision of defendant's probation agreement requiring reasonable suspicion. *Cf. State v. Thurman,* 846 P.2d 1256, 1273 (Utah 1993) (noting purpose behind illegal misconduct was not to "facilitate the search for evidence[,]" but was for personal safety of officers). Accordingly, defendant's alleged second "consent," even if voluntary, was invalid because it was gained by the agents' exploitation of their prior illegal conduct and, therefore, all evidence obtained thereby must be suppressed.

## CONCLUSION

Agents McCullough and Hillam did not have the authority to search defendant's refrigerator pursuant to defendant's probation agreement, nor did defendant voluntarily consent to the search. Additionally, even if defendant voluntarily consented to the subsequent search of the closet, this consent was not sufficiently attenuated to dissipate the taint of the prior search. Accordingly, defendant's conviction is reversed and we remand the case to the trial court for further proceedings consistent with this opinion.

GREENWOOD, J., concurs.

ORME, P.J., concurs in result.