STATE of Utah, Plaintiff and Appellee,

v.

Shayne M. HANSEN, Defendant and Appellant.

No. 990987–CA.

Court of Appeals of Utah.

Dec. 14, 2000.

Linda M. Jones and Otis Sterling, III, Salt Lake Legal Defender Association, Salt Lake City, for appellant.

Jan Graham, Atty. Gen., and Jeffrey S. Gray, Assistant Attorney General, Salt Lake City, for appellee.

Before GREENWOOD, P.J., DAVIS and ORME, JJ.

## OPINION

DAVIS, Judge:

¶ 1 Defendant Shayne Michael Hansen (Hansen) appeals his conviction for illegal possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (1998).

## BACKGROUND

¶ 2 On December 11, 1998, Officer Bruce Huntington of the Midvale City Police Department was driving behind Hansen. Officer Huntington initiated a computer check of Hansen's vehicle with the Utah Division of Motor Vehicles. While Officer Huntington waited for the results of the computer check, he observed Hansen make an improper left turn.[1] After Officer Huntington observed the turn, the computer check revealed that Hansen's car was uninsured. Due to these violations, Officer Huntington decided to stop

the vehicle, and he activated his overhead emergency lights. Hansen pulled off the road and stopped in the parking lot of a convenience store. Officer Huntington parked directly behind Hansen.[2]

¶ 3 Officer Huntington, dressed in uniform and carrying a sidearm, exited his patrol car and confronted Hansen. Officer Huntington told Hansen that he stopped him because of the improper lane change and lack of insurance. Hansen admitted that the did not have any insurance and stated that he could not afford insurance. Officer Huntington requested Hansen's driver's license and registration, and returned to his patrol car to run a computer check on Hansen. After approximately five minutes, the computer check revealed that Hansen's license was valid, and Hansen did not have any outstanding warrants. Officer Huntington then exited his patrol car and returned to Hansen. While Officer Huntington was walking back to Hansen's vehicle, another officer pulled into the parking lot. This second officer parked next to Officer Huntington's car, got out of his patrol car, and remained by the patrol cars. The emergency lights on both patrol cars were flashing, and they remained flashing throughout the encounter.

¶ 4 Upon returning to Hansen's vehicle, Officer Huntington told Hansen that state law required him to have automobile insurance, and Hansen needed to have an insurance agent mail proof of insurance to the Division of Motor Vehicles. Officer Huntington did not say anything to Hansen regarding the improper lane change. Officer Huntington then returned Hansen's driver's license and registration; however, Officer Huntington did not tell Hansen that he was free to leave. Instead, Officer Huntington asked Hansen if he had any alcohol, weapons, or drugs in his vehicle. Hansen replied that he did not have any such items. Officer Huntington then asked Hansen, "Do you mind if I check?"[3] Officer Huntington testi-

---

1. Hansen completed his left turn by entering the right lane, rather than the extreme left-hand lane, presumably in violation of Utah Code Ann. § 41–6–66 (1998).

2. It is not clear from the record whether Officer Huntington impeded Hansen's ability to drive off when he parked behind Hansen.

3. Officer Huntington testified with commendable candor that "It is my practice to ask them for

fied that Hansen responded, "Yes." [4]

¶ 5 Officer Huntington then told Hansen and his passenger to step out of the car, and Officer Huntington directed them to stand next to the other officer. Officer Huntington conducted a search of the car where he found a homemade billy club and a marijuana pipe on the floor of the driver's area of the car. Officer Huntington arrested Hansen and searched him incident to the arrest. During the search of Hansen, Officer Huntington found a substance he suspected to be methamphetamine. Hansen was later charged with possession of a controlled substance in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (1998), and unlawful possession of drug paraphernalia in violation of Utah Code Ann. § 58–37a–5 (1998).

¶ 6 Prior to trial, Hansen moved to suppress evidence obtained in the searches, claiming that Officer Huntington illegally detained him and that he did not voluntarily consent to the search of his car. The trial court denied Hansen's motion to suppress, concluding that the evidence was lawfully seized because "[a]t the time consent was obtained, there was no seizure for Fourth Amendment purposes because defendant was free to leave," and "[d]efendant's consent to search was freely and voluntarily given." Hansen later entered a conditional guilty plea to unlawful possession of a controlled substance. Hansen now appeals the trial court's denial of his motion to suppress.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Hansen alleges that the trial court erred in denying his motion to suppress because Officer Huntington's search violated his Fourth Amendment right against unreasonable searches and seizures. Specifically, Hansen argues that his consent to search was not valid because it was obtained through Officer Huntington's exploitation of an illegal seizure, and his consent was not voluntarily given.[5]

> [B]ecause the determination of whether an encounter with law enforcement officers constitutes a seizure under the Fourth Amendment " ' "calls for consistent application from one police encounter to the next, regardless of the particular individual's response to the actions of the police," ' " such determination is a legal conclusion that we review for correctness.

*Salt Lake City v. Ray*, 2000 UT App 55, ¶ 8, 998 P.2d 274 (citations omitted). Similarly, the trial court's ultimate conclusion that consent was voluntary or involuntary is reviewed for correctness. *See State v. Thurman*, 846 P.2d 1256, 1271 (Utah 1993). However, "[T]he trial court's underlying factual findings will not be set aside unless they are found to be clearly erroneous." *Id.*

## ANALYSIS

### I. Nature of the police encounter

¶ 8 Hansen argues that the trial court erred in its conclusion that, at the time the consent was obtained, there was no seizure for Fourth Amendment purposes because Hansen was free to leave.

The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The United States Su-

consent by stating, 'Do you have any alcohol, weapons or drugs in the vehicle?' And if they say no, I say, 'Well do you mind if I check?' "

**4.** The record indicates that Officer Huntington was unsure about Hansen's response. For example, during both direct and cross examination, Officer Huntington testified that Hansen responded "yes" to the question "Do you mind if I check?" However, in both instances the court interjected by asking Officer Huntington if Hansen said "yes, he minded." Officer Huntington responded to the court's questions by stating that Hansen said "yes, I could have consent." However, Officer Huntington later admitted that he

did not remember Hansen's exact response regarding his question—"Do you mind if I check?"

**5.** In determining whether a defendant's consent to a search following illegal police activity is valid under the Fourth Amendment, we look to: (i) the voluntariness of the consent, and (ii) whether the consent was obtained by police exploitation of the prior illegality. *See State v. Thurman*, 846 P.2d 1256, 1262 (Utah 1993). Therefore, we begin our analysis with the issue of whether Officer Huntington's seizure was illegal and then analyze whether Hansen's consent was voluntary.

preme Court has held that "stopping an automobile and detaining its occupants constitute[s] a seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Thus, "[a]lthough a person has a lesser expectation of privacy in a car than in his or her home, one does not lose the protection of the Fourth Amendment while in an automobile." *State v. Schlosser*, 774 P.2d 1132, 1135 (Utah 1989) (citation omitted). *State v. Lopez*, 873 P.2d 1127, 1131 (Utah 1994) (alteration in original).

¶ 9 "In reviewing the legality of a traffic stop, we consider two questions: '[W]hether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *State v. Patefield*, 927 P.2d 655, 657 (Utah Ct.App.1996) (alteration in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)); *accord Lopez*, 873 P.2d at 1131–32. With respect to the first question, a police officer is constitutionally justified in stopping a vehicle if the stop is "incident to a traffic violation committed in the officers' presence." *State v. Talbot*, 792 P.2d 489, 491 (Utah Ct.App.1990); *see also State v. Marshall*, 791 P.2d 880, 881–83 (Utah Ct.App.1990); *State v. Sierra*, 754 P.2d 972, 975 (Utah Ct.App.1988).

¶ 10 Here, Hansen was seized by Officer Huntington when he was stopped for the improper lane change and lack of insurance. It is clear that Officer Huntington was justified in seizing Hansen because Hansen committed two traffic violations in the officer's presence. Consequently, Hansen does not dispute the legality of the initial stop and the first part of the *Terry* inquiry is not at issue.

¶ 11 The second question in reviewing the legality of a traffic stop is whether the stop was reasonably related in scope to the traffic violation which justified it in the first place. *See Patefield*, 927 P.2d at 657. "Once a traffic stop is made, the detention 'must be temporary and last no longer than is necessary to effectuate the purpose of the

stop.'" *Lopez*, 873 P.2d at 1132 (quoting *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). Both "[t]he length and scope of the detention must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *State v. Johnson*, 805 P.2d 761, 763 (Utah 1991) (quoting *Terry*, 392 U.S. at 19–20, 88 S.Ct. 1868). Therefore,

> [a]n officer conducting a routine traffic stop may request a driver's license and vehicle registration, conduct a computer check, and issue a citation. *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1988). However, once the driver has produced a valid license and evidence of entitlement to use the vehicle, "he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning." *Id.*

*State v. Robinson*, 797 P.2d 431, 435 (Utah Ct.App.1990). "Investigative questioning that further detains the driver must be supported by reasonable suspicion of more serious criminal activity. Reasonable suspicion means suspicion based on specific, articulable facts drawn from the totality of the circumstances facing the officer at the time of the stop." *Lopez*, 873 P.2d at 1132.

¶ 12 Here, Hansen claims that he was illegally seized at the time the alleged consent was obtained because Officer Huntington engaged in investigative questioning without reasonable suspicion of more serious criminal activity. The State counters that when Officer Huntington gave Hansen a warning and returned his license and registration, the encounter between Officer Huntington and Hansen ceased to be a seizure under the Fourth Amendment.

> Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, there are three levels of police-citizen encounters, each requiring a different degree of justification under the Fourth Amendment. *State v. Munsen*, 821 P.2d 13, 15 n. 1 (Utah App.1991), *cert. denied*, 843 P.2d 516 (Utah 1992). The first level occurs when an officer approaches and questions a suspect. An officer may stop and question a person at any time so long

as that person "is not detained against his [or her] will." *Id.* The next level is reached when an officer temporarily seizes a person. In order to legally effect a temporary seizure, the officer must have "articulable suspicion" that the suspect has or is about to commit a crime, and the detention must be limited in scope. *Id.* The third level is arrest, which requires probable cause for the officer to believe that a crime has been or is about to be committed. *Id.*

*Salt Lake City v. Smoot,* 921 P.2d 1003, 1006 (Utah Ct.App.1996) (alteration in original). The Supreme Court of Utah has declared:

> Not every encounter between a police officer and a citizen is a seizure. A person is seized under the Fourth Amendment when, considering the totality of the circumstances, the police conduct would have communicated to a reasonable person that the person was not free to decline the officer's requests or otherwise terminate the encounter and go about his or her business.

*State v. Higgins,* 884 P.2d 1242, 1244 (Utah 1994) (internal citations omitted).

> Illustrating this standard, the United States Supreme Court noted: "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."

*State v. Patefield,* 927 P.2d 655, 659 (Utah Ct.App.1996) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). Furthermore,

> [o]nce a person is seized for Fourth Amendment purposes, the seizure does not cease simply because the police formulate an uncommunicated intention that the seized person may go on his or her way. *For the seizure to end, it must be clear to the seized person, either from the words of an officer or from the clear import of the*

*circumstances, that the person is at liberty to go about his or her business.*

*Higgins,* 884 P.2d at 1244 (emphasis added).

 ¶ 13 In the present case, the trial court concluded that the detention did not exceed the scope of the traffic stop and that at the time Hansen consented to the search, there was no seizure for Fourth Amendment purposes. We disagree. The record clearly indicates that neither the words of Officer Huntington nor the clear import of the circumstances would have communicated to a reasonable person that the person was free to decline the officer's requests, terminate the encounter, and go about his or her business. Although Officer Huntington returned Hansen's driver's license and registration, given the surrounding circumstances, this act alone would not have communicated to a reasonable person that he or she was free to leave. *See United States v. Sandoval,* 29 F.3d 537, 540 (10th Cir.1994) ("In the context of traffic stops this Circuit has adopted as an indicium of a seizure the officer's taking of necessary documentation (driver's license and vehicle registration) from a driver, and we have also considered as a necessary (but not always sufficient) condition of the termination of that seizure the officer's return of such documentation...."). For example, after Officer Huntington returned Hansen's license and registration, Officer Huntington did not say anything to Hansen that would have indicated that Hansen was free to go. We recognize that an officer is not required to inform a detainee that they are free to go, *see Ohio v. Robinette,* 519 U.S. 33, 38, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996); however, such a statement would have supported the trial court's conclusion that Hansen was not seized at the time he gave consent. *See United States v. Torres–Guevara,* 147 F.3d 1261, 1265 (10th Cir.1998) (stating defendant was not seized for Fourth Amendment purposes, in part, because officers told defendant she was free to leave); *United States v. Gregory,* 79 F.3d 973, 979 (10th Cir.1996) ("Although not prerequisites, in determining whether consent is voluntary when given following the return of defendant's documents, we look at such factors as whether the officer informed the defendant that he was free to leave the scene or that he could refuse to

give consent."); *United States v. McSwain,* 29 F.3d 558, 563 (10th Cir.1994) (same).

¶ 14 Not only did Officer Huntington fail to communicate to Hansen that he was free to leave, the question that Officer Huntington asked Hansen—"Do you have any drugs, alcohol or weapons in the car?"—communicated the message that Hansen was not free to leave. This question, although not directly accusatory, was clearly investigatory, indicating that Officer Huntington suspected that Hansen was engaged in some sort of illegal activity. Therefore, investigatory questions such as the one asked here actually cut against the proposition that a reasonable person would feel that the initial seizure has ended and that he or she is now free to terminate the encounter. *Cf. Sandoval,* 29 F.3d at 542 (stating that the crucial predicate to a voluntary police citizen encounter was missing because "[a]t no point did the nature of those inquiries [about defendant's drug involvement] change the climate so that the reasonable listener would view participation in the exchange as freely terminable"); *Washington v. Soto–Garcia,* 68 Wash.App. 20, 841 P.2d 1271, 1273–74 (1992) (holding that progressive intrusion into defendant's privacy was of such a nature that a reasonable person would not believe that he or she was free to end the encounter).

¶ 15 In addition to Officer Huntington's words, the clear import of the circumstances in the present case would not have indicated to a reasonable person that he or she was free to leave. Officer Huntington remained at Hansen's vehicle and continued to ask Hansen questions, both Officer Huntington and a second armed officer's vehicles remained parked behind Hansen with their emergency lights flashing, and the second officer remained outside his vehicle throughout the encounter. Finally, Officer Huntington did not make any indication to Hansen as to how he intended to handle the improper lane change before he asked Hansen if he had any alcohol, weapons, or drugs in the vehicle. Officer Huntington merely told Hansen to have his insurance agent call the Division of Motor Vehicles, and he returned Hansen's license and registration. Because of the clear import of the circumstances,

especially the fact that Officer Huntington had not addressed one of the reasons for the initial stop, a reasonable person would not have felt free to terminate the encounter and proceed on his or her way.

¶ 16 Due to the factors discussed above, we find that Hansen remained seized for Fourth Amendment purposes when, and because, Officer Huntington asked him whether there was alcohol, drugs, or weapons in the vehicle. Likewise Hansen was seized for Fourth Amendment purposes when Officer Huntington requested consent to search the car. The State concedes that Officer Huntington did not have a reasonable articulable suspicion of more serious criminal activity to justify the investigative questions. Therefore, Hansen was illegally detained when Officer Huntington asked him questions that were not reasonably related in scope to the traffic violation which justified the initial seizure. *See United States v. Walker,* 933 F.2d 812, 816 (10th Cir.1991) (holding that defendant was unreasonably seized under Fourth Amendment when officer detained him to ask questions unrelated in scope to the reasons that justified the initial traffic stop).

## II. Voluntariness of Consent

¶ 17 We now turn to the issue of whether Hansen's consent to search was valid despite the illegality of Officer Huntington's seizure.

A warrantless search is a per se Fourth Amendment violation unless the State can establish one of the " 'few specifically established and well-delineated exceptions.' " *State v. Arroyo,* 796 P.2d 684, 687 (Utah 1990) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (citations omitted)); *accord State v. Sepulveda,* 842 P.2d 913, 918 (Utah App.1992). One of the clearly established exceptions is a consent. *Arroyo,* 796 P.2d at 687; *Sepulveda,* 842 P.2d at 918.

*State v. Ham,* 910 P.2d 433, 438 (Utah Ct. App.1996).

¶ 18 "[A] defendant's consent to a search following illegal police activity is valid under the Fourth Amendment only if both of the following tests are met: (i) The consent was given voluntarily, and (ii) the consent was not obtained by police exploita-

tion of the prior illegality." *State v. Thurman*, 846 P.2d 1256, 1262 (Utah 1993); *see also State v. Arroyo*, 796 P.2d 684, 688 (Utah 1990). "It is the State's burden to prove that a consent was voluntarily given... : If the State fails to meet this burden, the evidence is deemed inadmissible against the defendant." *Ham*, 910 P.2d at 439; *accord Thurman*, 846 P.2d at 1263; *State v. Robinson*, 797 P.2d 431, 437 (Utah Ct.App.1990). This court has adopted the following analytical framework to determine whether the State has met its burden of proving that consent was voluntarily given:

'(1) There must be clear and positive testimony that the consent was "unequivocal and specific" and "freely and intelligently given"; (2) the government must prove consent was given without duress or coercion, express or implied; and (3) [when evaluating these first two standards, we] indulge every reasonable presumption against the waiver of fundamental constitutional rights and there must be convincing evidence that such rights were waived.'

*Ham*, 910 P.2d at 439 (citations omitted) (alterations in original). In determining whether consent was voluntarily given we will look to the "totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973); *accord Ham*, 910 P.2d at 439.

¶ 19 As stated above, Hansen was illegally seized at the time Officer Huntington requested consent to search Hansen's vehicle. Therefore, for the evidence discovered in the search to be admissible, Hansen's consent, if given, must have been voluntary, and the consent must not have been obtained by police exploitation of the prior illegality. The trial court concluded that Hansen's "consent to search was freely and voluntarily given." [6] We disagree for the following reasons.

¶ 20 First, Officer Huntington's testimony was neither clear nor positive regarding Hansen's response to his second question. *See Ham*, 910 P.2d at 439 (requiring testimony that consent was unequivocal and specific

and freely and intelligently given). Specifically, the following colloquies took place:

Q. [Prosecutor] And then you asked, "Do you mind if I check?"

A. [Officer Huntington] Uh-huh.

Q. And what was his response to that question?

A. He said yes.

Q. [Court] Yes, he minded?

A. Yes, I could have consent to search.

. . .

Q. [Defense Counsel] Do you recall specifically what you said to him?

A. Not specifically.

Q. Do you have any idea?

A. I would imagine that I stated: "Do you have any alcohol, drugs or weapons in the vehicle?"

Q. He said no?

A. He said no. Do you mind if I check?

Q. Okay.

A. And then he said yes.

Q. [Court] He said?

Q. [Defense Counsel] He says yes?

A. [Officer Huntington] Yes.

Q. [Court] Do you mind if I check—and he says yes?

A. Well, do you mind if I check and then yes, he gave me consent. Sorry.

. . .

Q. [Defense Counsel] What did he say?

A. What did he say?

Q. Yeah.

A. I don't recall exactly other than it was consent.

Q. So you don't recall his exact words?

A. Not exactly.

¶ 21 Officer Huntington testified twice that he asked Hansen, "Do you mind if I check?" and Hansen responded, "Yes." The court clearly realized the import of officer Huntington's testimony and interrupted the attorneys in an effort to clarify Officer Hunt-

---

**6.** The trial court did not make any conclusion regarding the second factor—whether the consent was obtained by police exploitation of the

prior illegality—because the trial court concluded, erroneously, that there was no illegality preceding defendant's alleged consent to search.

ington's testimony. However, Officer Huntington's responses to the court's questions were conclusory rather than "clear and positive testimony" that Hansen's reply was " 'unequivocal and specific.' " *Ham*, 910 P.2d at 439 (citations omitted). Moreover, Officer Huntington admitted that he did not recall Hansen's exact words. Therefore, we hold that the trial court's determination that the testimony was clear and positive that Hansen's response was unequivocal and specific was incorrect. To the extent its determination amounted to a finding of fact, it was clearly erroneous.

¶ 22 The *Ham* analytical framework requires us to next address whether Hansen's response was freely and intelligently given and obtained without duress or coercion, express or implied.[7] *See Ham*, 910 P.2d at 439.

> [T]he Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion was applied, the resulting "consent" would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed.

*Schneckloth*, 412 U.S. at 228, 93 S.Ct. 2041.

> In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, a court must take into account both the details of police conduct and the characteristics of the accused, *Arroyo*, 796 P.2d at 684[,] *which include "subtly coercive police questions*, as well as the possibly vulnerable subjective state of the person who consents." *Schneckloth*, 412 U.S. at 229, 93 S.Ct. at 2049.

*State v. Robinson*, 797 P.2d 431, 437 (Utah Ct.App.1990) (emphasis added).

¶ 23 The present case is quite similar to *Ohio v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997). In *Robinette*, an officer stopped the defendant for a speeding violation. *See id.* at 764. The officer issued the defendant a verbal warning for the speeding violation, and returned the defendant's driver's license. *See id.* The officer then said to the defendant, "One question before you get gone [sic]: are you carrying any illegal contraband in your car? Any weapons of any kind, drugs, anything like that?" *Id.* When defendant responded that he did not have any contraband in the car, the officer asked if he could search the vehicle. *See id.* The defendant answered "yes" to the officer's request. *See id.* On remand from the Supreme Court of the United States, *see Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996), the Supreme Court of Ohio looked at the totality of the circumstances to determine whether a reasonable

---

7. Our colleague suggests that our analysis should conclude with our ruling that the trial court incorrectly determined that the testimony was clear and positive that Hansen's response to the officer's second question was unequivocal and specific.

While we may elect to forego further analysis in cases where one or more decided issues may arguably be dispositive, we are not obliged to do so. Indeed, there are numerous circumstances under which we may elect to reach an issue that arguably need not be addressed in order to resolve the case. Our election to treat moot issues which are of significant public import and likely to recur, even where the issue is not likely to evade judicial review, finds a particularly appropriate analog in this case. *See, e.g., In re S.L.*, 1999 UT App 390, ¶ 40, 995 P.2d 17 (reaching merits of issue capable of judicial review because it was of significant public import and was likely to recur) *cert denied*, 4 P.3d 1289 (Utah 2000); *W. & G. Co. v. Redevelopment Agency*, 802 P.2d 755, 765 (Utah Ct.App.1990) (addressing issue, even though other issue dispositive, because "it is of wide concern ... it significantly affects the public interest, and it is likely to recur in a similar manner"); *cf. State v. Rodriguez–Lopi*, 954 P.2d 1290, 1294 n. 2 (Utah Ct.App.1998) (Davis, J., concurring) (addressing issue because "[t]his situation is somewhat analogous to a determination of whether to reach a moot issue"). We may also analyze an issue to enable the supreme court to address that issue on review. *Cf. State v. Maguire*, 957 P.2d 598, 600 (Utah 1998) (stating that issue was outside scope of review because court of appeals did not reach issue). We may also wish to provide guidance for further proceedings. *See, e.g., State v. James*, 819 P.2d 781, 795 (Utah 1991) ("Issues that are fully briefed on appeal and are likely to be presented on remand should be addressed by [an appellate] court."); *State v. Bell*, 770 P.2d 100, 108 (Utah 1988) (addressing issue in interest of judicial economy, since issue likely to recur, to provide trial court with guidance); *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 231 (Utah 1987) (same); *Vitale v. Belmont Springs*, 916 P.2d 359, 363 (Utah Ct.App.1996) (addressing issue in interest of judicial economy, even though case decided on other grounds).

person would have believed that they could refuse to answer further questions and leave. *See Robinette*, 685 N.E.2d at 769. The court then ruled that

> [the officer's] words did not give Robinette any indication that he was free to go, but rather implied just the opposite—that Robinette was *not* free to go until he answered [the officer's] additional questions. The timing of [the officer's] immediate transition from giving Robinette the warning for speeding into questioning regarding contraband and the request to search is troubling.... "The transition between detention and a consentual [sic] exchange can be so seamless that the untrained eye may not notice that it has occurred. The undetectability of that transition may be used by police officers to coerce citizens into answering questions that they need not answer, or to allow a search of a vehicle that they are not legally obligated to allow." ... When these factors are combined with a police officer's superior position of authority, any reasonable person would have felt compelled to submit to the officers questioning.

*Id.* at 770–71 (citation omitted) (emphasis in original).

¶ 24 Here, as in *Robinette*, the intrusive and suspicious questions asked by the officer, combined with the fact that the questions were asked immediately after the defendant was detained, indicate that a reasonable person would not have felt free go until they answered the additional questions. Furthermore, although the questions were not expressly coercive, the circumstances surrounding the request to search made the request subtly coercive. Specifically, Officer Huntington had only issued a warning regarding the lack of insurance and he had not taken

any action regarding the improper left turn. Therefore, a reasonable person would not have felt that their consent, if given, was a voluntary act of free will because Officer Huntington could have cited Hansen for the improper lane change if Hansen was uncooperative regarding the search.[8] *See Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) ("[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was *freely and voluntarily given*.... ") (emphasis added).

¶ 25 Officer Huntington did not provide clear and positive testimony that Hansen's alleged consent was unequivocal and specific. Furthermore, in looking at the totality of the circumstances, it is clear that officer Huntington's request was coercive, and a reasonable person would not have felt free to ignore Officer Huntington's request. Therefore, because we indulge every reasonable presumption against the waiver of fundamental constitutional rights, *see Ham*, 910 P.2d at 439, we hold that the trial court erred in concluding that Hansen's consent was freely and voluntarily given.[9]

## CONCLUSION

¶ 26 We conclude that the trial court erred in denying Hansen's motion to suppress the evidence obtained in the search of Hansen's car. Hansen was illegally detained when Officer Huntington asked for consent to search Hansen's vehicle. Officer Huntington did not provide clear and positive testimony that Hansen's alleged consent was unequivocal and specific and freely and intelligently given. In addition, the State did not prove that Hansen's alleged consent was giv-

---

8. It is irrelevant that Hansen may have known that the search would have turned up contraband, thereby reducing the coercive nature of the situation (i.e., Hansen should have preferred the citation over the search) because the " 'reasonable person' test presupposes an *innocent* person." *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991) (emphasis in original); *accord Michigan v. Chesternut*, 486 U.S. 567, 574, 108 S.Ct. 1975, 1979–80, 100 L.Ed.2d 565 (1988) ("This 'reasonable person' standard ... ensures that the scope of

Fourth Amendment protection does not vary with the state of mind of the particular individual being approached.").

9. Because we conclude that Hansen did not voluntarily consent to the search, we do not address whether the consent was obtained by police exploitation of the prior illegality. *See Thurman*, 846 P.2d at 1262 ("If the court determines that the consent was not voluntary, no further analysis is required: the consent is invalid and the proffered evidence must be excluded.").

en without duress or coercion. Consequently, Officer Huntington's search of Hansen's vehicle violated Hansen's rights under the Fourth Amendment and the trial court erred in denying his motion to suppress the evidence discovered in the search.

¶ 27 Reversed and remanded for further proceedings consistent with this opinion.

¶ 28 I CONCUR: GREGORY K. ORME, Judge.

GREENWOOD, Presiding Judge (concurring in result):

¶ 29 I agree with my colleagues that Hansen was illegally detained when the officer asked for permission to search his vehicle and conducted that search. I also agree that the trial court erred in determining that Hansen gave his clear and unequivocal consent to the search. Having made that determination, I would not undertake to analyze whether Hansen's non-consent was obtained without duress or coercion. I would therefore concur in the conclusion that the trial court erred in denying Hansen's motion to suppress.